The STANDARD INSURANCE COMPANY, Appellant,

v.

Mrs. Charley THOMAS et al., Appellees.

No. 73.

Court of Civil Appeals of Texas.

Tyler.

Oct. 22, 1964.

Julietta Jarvis, Bryan & Patton, Houston, for appellant.

Bill Allen, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellees.

MOORE, Justice.

This suit was brought by Mrs. Charlcy Thomas and her minor son, Paul Thomas, under the provision of the Texas Workmen's Compensation Act, against The Standard Insurance Company for death benefits under the Act on account of the death of Walter Clifton Thomas as a result of an injury alleged to have been sustained by him while working in the course of his employment for National Tank Company. Based upon the verdict of the jury, the Trial Court rendered judgment for Appellees, Charlcy Thomas and her son, Paul Thomas, against Appellant, The Standard Insurance Company, for death benefits under the Act, payable in a lump sum, together with the sum of $500.00 for funeral benefits. From this judgment The Standard Insurance Company has appealed.

It was admitted by the Appellant in reply to Appellees' Request for Admissions of Facts that deceased, Walter Clifton Thomas, sustained a cerebral stroke on April 20, 1962, while working in the course and scope of his employment for National Tank Company.

In response to the Special Issues submitted by the Court, the jury found (1) that deceased sustained a cerebral stroke on or about April 20, 1962; (2) that such cerebral stroke was an accidental injury; (2a) that such accidental injury occurred in Houston County, Texas; (3) that such injury was received in the course of his employment with National Tank Company; (4) that such injury was a producing cause of the death of the deceased; (5) that manifest hardship and injustice would result if compensation payments were not paid in a lump sum; and (6) that the death of the deceased was not solely caused by prior body and physical conditions.

The evidence shows that the deceased, Walter Clifton Thomas, prior to the time of his death, had for many years followed the trade of a boilermaker, and for a period of some three months prior to his death had been in the employment of National Tank Company engaged in constructing large steel storage tanks used for the purpose of storing oil. It was further shown that the place at which the tanks were being constructed was in a river bottom and that it was a hot and humid day with the temperature rising to 82 degrees. During the early afternoon of April 20, 1962, Mr. Thomas, together with other employees of the National Tank Company, was engaged in the erection of two 500-barrel sunk-bottom meal tanks. This work required manual installation of fourteen 5' x 8' staves of twelve guage tank steel around the chime of the tank, each of which staves weighed between 160 and 180 pounds. The foreman, Mr. Beard, testified that he and Mr. Thomas had to lift and carry each stave about four to six feet and then had to lift it up and place it in its correct position on the chime of the tank. This required that each stave be lifted from a flat position to an upright position, and then be carried in an upright position. Mr. Beard, as well as two other fellow employees, testified that when they had lifted twelve of the fourteen staves and placed them in their proper place on the tank and were in the process of carrying the thirteenth stave to its proper position on the tank, Mr. Thomas appeared to have stumbled over a clod of dirt and fell to the ground; that he was unable to get up, and that thereafter he immediately appeared to be somewhat addled, was unable to talk and was in a semiconscious condition. He was immediately placed in an automobile and was carried to a hospital in Trinity, Texas. After a brief stay in the hospital in Trinity, he was transported by an ambulance to a community hospital in Houston where he remained until April 28, 1962, under the care of his family physician, Dr. Loren Rohr, who diagnosed his condition as a "left hemiplegia" or a cerebral stroke resulting in paralysis of his left side, which condition persisted until his death on July 12, 1962.

Appellees produced evidence to the effect that prior to his cerebral stroke, Mr. Thomas was active in his work as a tank builder and was apparently in good physical condition, performing all his duties free from any apparent physical ailments. He was 52 years of age, six feet tall and weighed approximately 180 pounds, and was described as being a muscular man. Before his stroke, Mr. Thomas was described as a happy, easy-going person, not prone to worry.

Following his discharge from the hospital on April 28, he was confined to his bed at his home. A bed bar was constructed over his bed, by means of which he was able to pull himself up with his right hand and to occasionally get into a wheelchair. He continued to be paralyzed on his left side and his physical condition did not improve, but progressively grew worse. He became depressed and despondent and

continued to be until he finally died on July 12, 1962.

Both Dr. Rohr, family physician of the deceased, and Dr. James Greenwood, Appellant's examining physician, agree that the deceased suffered a cerebral stroke, medically described as a "left hemiplegia" apparently as a result of some cerebral vascular accident or condition on the right side of his brain. Neither of the two doctors were able to definitely determine whether the lesion in the brain resulted from a hemorrhage or a blood clot. Dr. Greenwood, at the request of the insurance company, examined deceased only one time after he had been removed from the hospital to his home. He testified that he had requested Appellant to make arrangements for him to make further examinations of deceased but Appellant declined to do so.

Dr. Rohr testified that he found no bruise or contusion about the head and was unable to find anything in the medical history of the deceased which would account for the occurrence of such a condition. He testified that at that time, he found that Mr. Thomas had a suspicious coronary insufficiency which led him to believe that he had some arteriosclerosis of the coronary vessels. He testified that Mr. Thomas would be predisposed to such disease because of the fact that his cholesterol level was found to be above normal. He further testified that the paralysis could have been brought about by either a rupture of a blood vessel or by a blood clot causing the supply of the blood to be shut off, but without surgery he could not definitely determine which had occurred. In response to a hypothetical question propounded to Dr. Rohr by counsel for the Appellees inquiring as to whether the work in which deceased was engaged at the time of the stroke was, in his opinion, a producing cause, aggravating cause, or a precipitating cause of the stroke, the doctor replied:

"A. * * * While we cannot definitely state the exact nature of the lesion that caused Mr. Thomas's stroke, there is no doubt in my mind that the lifting and straining that he was doing in the heat of the day was a precipitating factor of the onsetting symptons, ultimately resulting in his death."

He further testified that the presence of arteriosclerosis would definitely cause Mr. Thomas to be susceptible to having a stroke on heavy lifting.

Dr. Greenwood, on the other hand, testified that he was of the opinion that the cause of the cerebral stroke was brought about by a long standing arteriosclerotic condition, or a hardening of the arteries, and that the stroke would have occurred as a natural result of such disease of the blood vessels without the intervention of anything else. He did recognize, however, that an aneurysm, or weakness of blood vessels, can be immediately precipitated by physical exertion and that a thrombosis, or clot, can occur as a result of exertion when coupled with arteriosclerosis. Upon the question of whether or not physical exertion was considered by him to be a contributing factor in causing a cerebral stroke, we quote the following questions propounded to Dr. Greenwood by Appellees' counsel, together with his answers thereto:

"Q. Again, in fairness, you are not able to rule out in this particular man's case, and having seen him one time, * * * you are not able to rule out the physical exertion that he was doing in that hot weather, as a precipitating cause of the condition that already existed; that is bringing it on and accelerating it and making the stroke occur at that particular time, are you?

"A. It would have been a factor in precipitating, yes.

"* * *

"Q. * * * Can we agree that the physical exertion that this man was

subject to, at the time he had his initial stroke, was the precipitating cause of the stroke at that particular time, coupled with the condition of arteriosclerosis that pre-existed?

"A. I don't think I can answer that, because I still don't know how severe this exertion was for him. I mean lifting eighty pounds, his half of the 160, perhaps depending on which end was lower—a well muscular man that had been doing it off and on for a long period of time, I don't think it is a true precipitating cause. I can't deny it either.

"Q. You just can't say one way or the other, is that right?

"A. If the thing is going to happen, then it's a little more likely to happen during the exertion than it would be while he was asleep at night. We see them in both situations."

In connection with the question of the cause of death, Appellant introduced in evidence the Death Certificate of deceased. The Certificate of Death was executed by Dr. William R. Masters, who was shown to be an associate of Dr. Rohr. Although the testimony shows that Dr. Masters did not treat the deceased, he occasionally accompanied Dr. Rohr on hospital visits when Dr. Rohr was treating him. The Certificate recites that the "immediate cause" of death was "coronary occlusion" due to arteriosclerosis. The Death Certificate was filled out and signed by Dr. Masters because Dr. Rohr was not immediately available.

■ Appellant urges by the first 16 Points of Error that there was no evidence, or at least insufficient evidence, to sustain the submission of the jury's findings on Special Issues No. 2, 3 and 4, finding that deceased suffered an accidental injury while in the course of his employment and that such injury was the cause of death, and that therefore the Court erred in submitting the cause to the jury

and in overruling Appellant's Motion for Instructed Verdict and Motion for Judgment Notwithstanding the Verdict, and further urging that the Court erred in entering judgment for the Appellees because there was no evidence, or at least insufficient evidence, to support the finding that death was not solely caused by the prior physical condition of deceased.

Under the evidence above detailed, we think it cannot be said, as a matter of law, that this record contains no evidence of probative force which would support the jury findings as above indicated. The evidence conclusively shows that immediately before suffering the cerebral stroke, Mr. Thomas was apparently in good physical condition in that he had been performing all of the duties required of him in lifting, carrying and placing the large, heavy metal staves on the tank. While assisting his foreman in carrying this heavy metal plate in an upright position, it is agreed by both medical witnesses that he suffered some type of lesion in his brain which immediately produced a cerebral stroke. These facts, when considered with the other compelling circumstances, together with the testimony of Dr. Rohr, positively stating that the lifting and straining that Mr. Thomas was doing in the heat of the day was a precipitating factor of the onsetting symptoms, which ultimately resulted in his death, amounts to evidence of sufficient probative force to sustain the finding that such injury was an accidental injury arising out of the employment and causing death. Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581.

■ It is true that there is no direct evidence as to the exact type of lesion in the brain. Although Dr. Greenwood was of the opinion that the stroke was but a natural result of the disease of arteriosclerosis, both he and Dr. Rohr were of the opinion that the stroke could have resulted from a ruptured blood vessel in the brain brought about by lifting and

straining. Aside from any consideration of the effect of arteriosclerosis or the formation of a blood clot, we think this testimony would be sufficient, circumstantially if nothing else, to afford the jury the right to conclude that Mr. Thomas suffered a rupture to the blood vessel of his brain and thus suffered an accidental injury.

■ It is now well settled that a ruptured blood vessel in the brain which was either caused or contributed to by the exertion and strain of the work in which the employee is engaged in at the time he was stricken is an accidental injury within the purview of the Workmen's Compensation Act and is compensable. Hurd v. Republic Underwriters (Tex.Civ.App.), 105 S.W.2d 428; Fidelity & Casualty Co. v. Van Arsdale (Tex.Civ.App.), 108 S.W. 2d 550; Traders & General Ins. Co. v. Rooth (Tex.Civ.App.), 268 S.W.2d 539; Consolidated Underwriters v. Dunn (Tex. Civ.App.), 155 S.W.2d 431.

■ Appellant argues, however, that since the Certificate of Death showed that death was not caused by the stroke, but was caused by a coronary occlusion due to arteriosclerosis, amounts to conclusive proof that death resulted from some cause other than the accidental injury, to-wit: heart failure. We overrule this contention. Although it be conceded that the Death Certificate is of some probative force, it cannot be considered as conclusive evidence of the cause of death, but is to be considered along with the other evidence upon the question. Thornell v. Missouri State Life Ins. Co. (Tex.Com. App.), 249 S.W. 203.

■ There is evidence in the record sufficient to support a finding that the lesion in the brain was the ultimate cause of death. On the other hand, even though it be conceded that the cause of death was a coronary occlusion caused by failure of the heart, there is evidence in the record which would support the conclusion that the lesion in the brain and the resulting stroke caused thereby set in motion a chain of events which ultimately caused the coronary occlusion resulting in death. Both medical witnesses recognized that any physical exertion, as well as any mental anxiety brought about as a result of the stroke, would be calculated to adversely affect the functioning of the heart, especially in view of the presence of arteriosclerosis. The question of whether or not the previous accidental injury was the cause of death or whether or not the previous accidental injury caused the coronary occlusion, which in turn ultimately caused death, was a question of fact for the jury.

■ In determining the question of the existence of evidence of probative force to sustain the jury's finding, we must consider only that evidence which would sustain the jury's finding and disregard all other evidence. Jecker v. Western Alliance Insurance Company, Tex., 369 S.W.2d 776; Liberty Mutual Insurance Company v. Lee, Tex., 381 S.W.2d 172.

In Traders & General Ins. Co. v. Rooth, supra, the Court held:

"Compensation benefits can be awarded if the workman, as a result of job exertion, sustains hemorrhages, ruptures or heart attacks, nowithstanding the fact that predisposing factors contribute to the incapacity or death.

" *  *  *

"A workman can recover compensation benefits if a job incident contributes to cause his incapacity. Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026; Travelers' Ins. Co. v. Peters, Tex.Civ.App., 3 S.W. 2d 568—affirmed Tex.Com.App., 17 S.W.2d 457. In other words, a predisposing bodily infirmity will not preclude or reduce compensation benefits if the ultimate incapacity is contributorily caused by an accident arising out of the employment."

In Texas Employers' Ins. Ass'n v. Mc-Grady, Tex.Civ.App., 296 S.W. 920, writ dism., the court said:

"However, the mere fact that the person in whom the rupture occurred has at the time diseased arteries or high blood pressure is not conclusive proof that the injury is a result of a disease and not accidental. The weakened state of the arteries caused by the physical disorder, or the abnormal strain caused by the high blood pressure, is merely a condition which some exciting or producing cause may operate. If a rupture results from lifting a heavy weight by a healthy person, it is because the exertion is too great for one in that physical condition. The legal principle is the same if the rupture results from lifting a lighter weight by a person of less strength, whether the reduced strength is the result of natural or diseased conditions. Whatever the physical condition of the individual may be, if it is such that it requires some physical exertion or strain to cause the rupture the injury may properly be classed as an accidental one. * * * Nor should it be said that an injury from overexertion by one in a debilitated condition is not an accident simply because it required less violent exercise to produce the injury. Since we cannot fix any standard of condition, neither can we fix any standard of sufficiency of cause operating upon the condition. The legal principle is the same, whether the injury results from lifting weights, as a can of paint, or by some other form of physical exertion." United States Fidelity and Guaranty Company v. Herzik (Tex.Civ.App.), 359 S.W.2d 914.

■ We have concluded the evidence supports the findings of the jury that Mr. Thomas's death resulted from an accidental personal injury sustained in the course of his employment, as well as their finding that his death was not solely caused by his prior physical condition. We are also of the opinion that the answers of the jury to Special Issues submitted herein are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Appellant's Points 1 through 16 are therefore overruled.

By Points 17 through 21 Appellant contends that the judgment should be reversed because of the error of the Trial Court in failing to grant Appellant's Motion for Instructed Verdict, Motion for Judgment Notwithstanding the Verdict, or a new trial on the ground that there was either no evidence or insufficient evidence to show that the alleged injury occurred in Houston County, the county in which this suit was filed and tried.

■ Appellant requested a submission of a fact issue regarding the location of the alleged injury which the Trial Court submitted, and the jury found that the injury occurred in Houston County, Texas.

The witness Frazier, a fellow employee of Mr. Thomas, testified that tanks were being constructed on what was known as the Bruton farm. Witness Sallas testified that he was familiar with all of Houston County and that he was also familiar with the Bruton farm and that it was situated in Houston County. He further testified that he had actually been on the farm and had seen tanks there, although he was unable to identify same as being the tanks in question.

Appellant did not offer any evidence showing that the alleged injury occurred in any other county.

We deem the above and foregoing testimony to be evidence of sufficient or probative force to sustain the jury's finding that the accidental injury occurred in Houston County, Texas. There being no evidence to the contrary, such finding cannot be said to be against the overwhelming weight and preponderance of the evidence.

Appellant's Points 17 through 21 are overruled.

By Point 22 Appellant complains of the action of the Trial Court in overruling its Motion for Mistrial because Appellee, Mrs. Thomas, in her testimony testified that the company had offered to make a settlement. After testifying that the representative of the Appellant had never offered to give Mr. Thomas further hospitalization or perform further tests, she testified in response to a question from her counsel as follows:

"Q. After he told you he would take it up with his Company, did he ever give you a definite answer after that?

"A. No, sir. There was one time he came out after Dr. Greenwood had been out there and offered a settlement. We told him, my husband and I both told him, that we wanted my husband put in the hospital, and the medical part of it to be taken care of. We weren't interested in talking about a settlement."

Counsel for Appellant objected and immediately made a Motion for Mistrial, but did not request the Court to instruct the jury not to consider the testimony.

■ Though we recognize the general rule that offers of settlement are not admissible, we have concluded that the refusal of the Trial Court to declare a mistrial under the circumstances presented here do not present reversable error. Such testimony, being unresponsive, is not considered to be of such nature that the prejudicial effect thereof could not have been cured by an instruction by the Court and counsel for Appellant waived his right of having the jury instructed not to consider same. Moreover, Dr. Greenwood had previously given similar unresponsive testimony by stating that the Appellant had declined to authorize him to make further tests on Mr. Thomas because they said "they would try to make a settlement and work the thing out so the man could go ahead and get the tests himself." This testimony went into the record without objection; therefore, the testimony of Mrs. Thomas along the same line is thought to be cumulative, and in any event is not such as was reasonably calculated to cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

■ Point 23 complains of that portion of the judgment which allows a recovery on behalf of Appellee, Mrs. Thomas, for the sum of $500.00 for the expense of burial which had been paid by her.

Article 8306, Sec. 9, Vernon's Ann. Tex.Civ.St., provides as follows:

"If the deceased employee leaves no legal beneficiaries, the association shall pay all expenses incident to his last sickness as a result of the injury, and in addition a funeral benefit not to exceed Five Hundred Dollars ($500).

"If any deceased employee leaves legal beneficiaries, but is buried at the expense of his employer or any other person, the expense of such burial, not to exceed Five Hundred Dollars ($500) shall be payable without discount for present payment in addition to the compensation due the beneficiary or beneficiaries of such deceased employee, subject to the approval of the Board. As amended Acts 1961, 57th Leg., p. 1032, ch. 455, § 1." Prior to the 1961 amendment, the second paragraph read:

"Where any deceased employee leaves legal beneficiaries, but is buried at the expense of his employer or any other person, the expense of such burial, not to exceed $250.00, shall be payable out of the compensation due the beneficiary or beneficiaries of such deceased employee, subject to the approval of the Board."

Appellant contends that Mrs. Thomas should not be entitled to recover the ex-

pense of burial because the statute does not provide such a remedy in her behalf, but only provides a remedy for recovery of funeral expenses on behalf of the employer or some other person. Appellee, on the other hand, contends that it was the intention of the Legislature in amending the statute to not only increase the amount allowable for funeral expenses, but also to establish funeral expenses as a separate form of benefits payable not only to the employer or any other person, but also payable to the beneficiary or beneficiaries. Appellees argue that the new language, "in addition to," in lieu of the original language, "out of," was meant to afford the beneficiaries some additional financial benefits and should not be construed as depriving a surviving wife or other beneficiary such benefits where she or he makes the payments. The question appears to be one of first impression.

As we construe the provisions of the second paragraph of the Act, we find nothing contained therein which could in any manner be construed as conferring upon the beneficiaries a right of recovery for funeral expenses. It appears to us that the Legislature intended to confer such right of recovery only on behalf of the employer or any other person who paid the funeral expenses and did not intend to confer a right of recovery upon the beneficiary or beneficiaries. If we be correct in this construction of the statute, then that portion of the judgment authorizing a recovery on behalf of one of the beneficiaries obviously cannot stand.

The judgment of the Trial Court granting Appellees a recovery for death benefits as provided for by the Act is in all things affirmed, but that portion of the judgment granting Appellee, Mrs. Thomas, a recovery for funeral and burial expense is hereby reversed and rendered in favor of Appellant, The Standard Insurance Company.

Affirmed in part and reversed and rendered in part.