United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 8, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 02-10005

————————

SANDRA JO ANDERSON, individually, legal heir, and as independent executor of the estate of Billy D Anderson,

Plaintiff - Appellee,

versus

SIEMENS CORPORATION; ET AL,

Defendants,

SIEMENS MEDICAL SYSTEMS INC,

Defendant - Appellant.

Appeal from United States District Court for the
Northern District of Texas

Before DAVIS, CYNTHIA HOLCOMB HALL[*], and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Siemens Medical Systems, Inc. ("Siemens"), a corporation that sells and distributes medical

devices, appeals from a jury's verdict finding it liable, under a strict products liability (design defect)

theory, to Sandra Jo Anderson ("Petitioner") and the estate of her late husband, Billy D. Anderson

———————

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

("Decedent"), for damages resulting from the stroke, in 1996, and subsequent death, in 1998, allegedly caused by the Siemens Servo 900C ventilator ("the ventilator") used on Decedent following his 1996 cardiac bypass surgery.[1]

Siemens argues that there was insufficient evidence to support the jury's verdict, that the district court made erroneous evidentiary rulings, that the damages awarded by the jury were excessive, and that the district court abused its discretion by awarding Petitioner pre-judgment interest during "periods of delay" caused by Petitioner.

Carried with this case is Siemens' motion to certify to the Texas Supreme Court the question of whether Texas would apply § 6(e) of the Restatement (Third) of Torts: Products Liability, under which "a retail seller or other distributor of a prescription drug or medical device" can be held strictly liable for a manufacturing defect and for negligent distribution, but not for a design defect.[2] Siemens argues that, if we do not certify the question, we should hold that Petitioner's design defect claim is barred by § 6(e).

I

In May of 1996, Decedent underwent cardiac bypass surgery at St. Luke's Hospital in San Antonio, Texas ("the Hospital"). According to Decedent's surgeon, Dr. Lawrence Hamner ("Dr. Hamner"), the operation lasted slightly longer than a normal bypass operation, but was otherwise uneventful. Following the operation, Decedent's blood pressure and heart rate readings were both

---

[1] Petitioner's complaint, which sought recovery on theories of strict products liability, negligence, breach of express warranty, and breach of implied warranty, was brought in part as a wrongful death action, and in part as a survival cause of action. *See* TEX. CIV. PRAC. & REM. CODE § 71.

[2] *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 6(e)(1998). Siemens adopts its motion to certify by reference, and reurges it here. *See* FED. R. APP. P. 28(i).

normal.  Decedent was placed in the intensive care unit (the "ICU"), where he was connected to the ventilator to support his breathing.

The ventilator had been sold by Siemens to the Hospital, who had made it available for use on patients.  The ventilator can be set at different ventilation modes.  The desired mode setting is selected using the ventilator's mode selection knob.  The ventilator is also equipped with several alarms, which are intended to alert medical personnel when a patient's exhaled air drops below, or increases above, certain levels.  Generally, a switch to the "manual" mode will trigger an alarm.  Such an alarm is necessary because, in the manual mode, the ventilator does not support a patient's breathing and is the equivalent of turning the ventilator completely off.

The respiratory therapist, Misti Condit ("Condit"), set the ventilator in accordance with the settings prescribed by the anesthesiologist, Dr. Chistopher Duncan ("Dr. Duncan").  The settings prescribed by Dr. Duncan did not involve use of the manual mode.  Around the time when Condit was attaching the ventilator to Decedent, the scene in the ICU became "harem scarem," according to Dr. Hamner.  The ICU nurses were attempting to attach other devices, including an EKG monitor and a blood pressure monitor, and the medical team was working frantically to fix the dopamine line and pulse oximeter, both of which were not functioning properly.

Within the first half hour that Decedent was in the ICU, a member of the medical team became aware that Decedent was no longer breathing.  Dr. Duncan immediately disconnected Decedent from the ventilator and began manually ventilating him with an Ambu bag.  When the matter was brought to Condit's attention, she walked over from the nurses' station, discovered that the ventilator was set in the manual mode, and immediately switched the mode back to its proper setting (the SIMV

setting).[3] There had been no audible alarm alerting the medical team to the ventilator's switch to the manual mode.[4]

In the meantime, Decedent had gone into cardiac arrest. As a result, Decedent was forced to undergo two additional surgeries during the night.[5] When Decedent awoke from anesthesia the following morning, the Hospital staff determined that Decedent had suffered a severe stroke sometime after he was anesthetized for his first surgery, but before he awoke. Decedent remained hospitalized for several months. Thereafter, Decedent returned home to the care of his wife, Petitioner.

Approximately two years later, in April of 1998, Decedent died. Decedent's death certificate, certified by Kerr County, lists "pneumonia" as the "IMMEDIATE CAUSE (Final disease or condition resulting in death)." As the "UNDERLYING CAUSE (disease or injury that initiated events resulting in death)," the death certificate lists "CVA" (i.e., cerebrovascular accident, or stroke) occurring "2 yrs" before death. The physician who prepared the death certificate certified in that document that, "To the best of my knowledge death occurred . . . due to the cause(s) and manner stated."[6]

---

[3] Condit is the only person who admits to having turned any knobs on the ventilator.

[4] At oral argument, Siemens' counsel conceded that it is undisputed that the alarm did not sound. Siemens' counsel also conceded that the mode knob was switched to the manual setting (from the SIMV mode setting), which stopped ventilation.

[5] In the operating room, Dr. Hamner reopened Decedent's chest, performed manual CPR, and put him on a heart-lung machine. Dr. Hamner placed a balloon pump in Decedent's femoral artery and brought him back to the ICU. Later that night, Dr. Hamner removed the balloon pump in the ICU and took Decedent back to the operating room for a third time to correct bleeding caused by the removal of the pump.

[6] The certifying physician did not testify at trial.

-4-

On behalf of herself and Decedent's estate, Petitioner sued Siemens in Texas state court.[7] Siemens removed to federal court, which exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332. The case then proceeded to a jury trial. The design defect question was submitted to the jury, who returned a verdict finding that (1) Petitioner proved that there was a design defect in the ventilator at the time it left the possession of Siemens that was a producing cause of Decedent's 1996 stroke; (2) Petitioner proved that Decedent's 1996 stroke was a producing cause of his death; (3) Siemens failed to prove that the negligence of the Hospital (through its respiratory therapist and/or its nurses) proximately caused Decedent's 1996 stroke, or that the negligence of Dr. Duncan proximately caused Decedent's 1996 stroke; (4) Siemens (the ventilator) caused 100% of the occurrence or injury (the Hospital caused 0%, and Dr. Duncan caused 0%); (5) Petitioner is entitled to $6 million in damages as compensation for her damages resulting from the injuries to Decedent; and (6) Decedent's estate is entitled to $1 million in damages as compensation for injuries that resulted from "the occurrence in question." The district court entered judgment, and subsequently denied Siemens' motion for judgment as a matter of law, as well as its alternative motions for a new trial and for remittitur. Siemens timely appealed.

II

Siemens asks us to certify to the Texas Supreme Court the question of whether Texas would apply § 6(e) of the Restatement (Third) of Torts: Products Liability, under which "a retail seller or

[7] Petitioner sought to recover the following damages as a result of Decedent's stroke and subsequent death: past mental anguish of Decedent; past physical impairment of Decedent; past and future loss of consortium for Petitioner; loss of support for Petitioner; loss of care, comfort, advice, household services, and counsel of Decedent for Petitioner; past reasonable and necessary medical expenses; past physical pain; suffering and disfigurement; past loss of earnings and earning capacity; pre-judgment and post-judgment interest; and reasonable and necessary burial expenses.

other distributor of a prescription drug or medical device" can be held strictly liable for a manufacturing defect and for negligent distribution, but not for a design defect.[8]

It is within our discretion to certify a state law question to the relevant state supreme court. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974). The Supreme Court of Texas may answer questions of law certified to it by a federal appellate court only if "the certifying court is presented with *determinative* questions of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1 (emphasis added).

We are not convinced that the instant matter presents a determinative question of Texas law, since Siemens has not shown that the ventilator qualifies as a "prescription drug or medical device" within the meaning of § 6 of the Restatement. Section 6(a) specifies that a "prescription medical device" is to be construed as something that cannot be "legally sold or otherwise distributed" without a health-care provider's prescription. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 6(a)(1998). Siemens does not argue that the ventilator may be legally sold or distributed only pursuant to a health-provider's prescription. Nor does the trial evidence support such a conclusion.[9]

Because Siemens has failed to demonstrate that its ventilator qualifies as a "prescription drug or medical device" within the meaning of § 6 of the Restatement, Siemens' motion to certify the question of whether Texas would apply § 6(e) of the Restatement (Third) of Torts is DENIED. For

---

[8] *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 6(e) & cmt. h (1998).

[9] Contrary to Siemens' assertion, the testimony given by Petitioner's expert, Jeff Butler, only showed that the ventilator should not be *used* without a prescription, since a physician must prescribe specific ventilator settings before the ventilator can be used on a patient. It is of no consequence that Butler generally agreed with Siemens' counsel's characterization of the ventilator as a "prescription medical device." Butler's testimony does not support that the ventilator cannot be *sold* or *distributed* without a physician's prescription.

this same reason, we hold that § 6(e) does not shield Siemens from liability in the instant matter.[10]

III

Siemens contends that there was no evidence to support the jury's finding that Decedent's 1996 stroke (caused by the ventilator's design defect) was a producing cause of his death in 1998. Over its hearsay objection, the district court admitted Decedent's death certificate, which Petitioner relied on to show the cause of death. According to Siemens, the district court abused its discretion by applying the hearsay exception for state-certified documents, found at § 191.052 of the Texas Health & Safety Code, to Decedent's death certificate, which was certified only by the *county*. Siemens also argues that, even if properly admitted, the statements contained in the death certificate do not provide evidentiary support for the jury's finding that Decedent's 1996 stroke was the producing cause of his death in 1998.

Generally, we review a district court's evidentiary rulings for an abuse of discretion. *Vance v. Union Planters Corp.*, 209 F.3d 438, 441 (5th Cir. 2000). However, where a party who objected to evidence on hearsay grounds only "generically" asserted that the relevant hearsay exception does not apply, or where that objection is not specific enough for the trial court to "take testimony, receive

---

[10] This conclusion is bolstered by a comment to § 6, which clarifies that § 6(e)'s purpose is to protect "intermediary parties," such as pharmacies, who rely on "the special expertise of manufacturers, prescribing and treating health-care providers, and governmental regulatory agencies." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY cmt. h. In other words, once the government approves a prescription product, the manufacturer distributes the product to an intermediary party, such as a pharmacy. And, if medical personnel have determined that the product can appropriately be dispensed to a particular patient, an intermediary who subsequently sells the product to that patient cannot be held liable if the product is ultimately deemed to have been defectively designed. Siemens is not the type of "intermediary" contemplated by this scheme. Unlike a pharmacy, Siemens' role in the distribution chain occurs prior to the time that any discretionary prescription is made. Accordingly, Siemens is subject to the general rule that distributors of products, even specialized machines, can be held strictly liable for design defects. *See id.* (citing §§ 1 and 2 of the Restatement).

argument, or otherwise explore the issue raised," we review the district court's ruling for plain error only.  *See United States v. Williams*, 264 F.3d 561, 575-76 (5th Cir. 2001).

Before the district court, Siemens' counsel made the following argument as to why Decedent's death certificate should not be admitted under the "vital statistics" exception to the hearsay rule:

> I think that it's an issue that requires expert testimony.  They only have one medical expert they're going to use, Dr. Olinger.  They did not identify him as a person who was going to testify on the cause of death . . . And I don't believe that the exception to the hearsay rule on vital statistics, which this is, not the government record exception, but it's under the vital statistics, makes all of the opinions as to cause and manner of death come in if it is one that requires expert testimony.

Siemens' counsel elaborated:

> And I don't think that they can just put a death certificate into evidence to prove something two years after an event was caused by it.  There is some case law that supports that, where the Court has refused to allow difficult diagnoses and causes stated in death certificates.  And I'll cite the Court to [*Holbrook v. Lykes*, 80 F.3d 777 (3rd Cir. 1996)[11]] where the court took out the terms – wouldn't allow the diagnosis and finding to meet the legal elements contained in the death certificate because that was a complicated issue.  And I think this is different.  I mean, if he had died right afterwards, that is one thing.  But here we have a span of two years, and the death certificate says pneumonia, then secondary to.  I think that's an issue he has to prove by competent expert testimony in this case.

Clearly, Siemens' objection, which focused on whether the death certificate could be admitted as evidence of cause of death without supporting expert testimony, did not direct the court's attention to the specific question before us ) ) whether the death certificate's county-certified status precluded it from being admitted under § 191.052 of the Texas Health & Safety Code.  Therefore, we review the court's ruling for plain error only.  *See Williams*, 264 F.3d at 575-76.

---

[11] In *Holbrook*, out-of-court statements on causation were struck on the ground that their prejudice outweighed any relevance under FED. R. EVID. 403.

Plain error is "'1) an error; 2) that is clear . . .; and 3) that affects the defendant's substantial rights." *Williams*, 264 F.3d at 574 (quoting *United States v. Izaguirre-Losoya*, 219 F.3d 437, 441 (5th Cir. 2000)). "Clear" means that the error is clear (i.e., obvious) under current law. *Brown v. Bryan County*, 219 F.3d 450, 466 (5th Cir. 2000)(citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). An error "affects substantial rights" if it necessarily impacted the outcome of the district court proceedings. *Id*. (citing *Olano*, 507 U.S. at 734). If all three of these elements are met, we may, in our discretion, correct "those errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Olano*, 507 U.S. at 734.

To interpret the breadth of the hearsay exception found at § 191.052, we must look first to the "plain and common meaning of the statute's words." *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 865 (Tex. 1999). The plain language of § 191.052 encompasses only records certified by the "state registrar." TEX. HEALTH & SAFETY CODE § 191.052 (Vernon 2001). Conspicuously absent is any statutory language providing that a death certificate certified only by a county) ) or other governmental subdivision) ) is also admissible under that statute. *Compare* TEX. HEALTH & SAFETY CODE § 191.052 ("A copy of a birth, death, or fetal death record registered under this title that is certified by the *state registrar* is prima facie evidence of the facts stated in the record.")(emphasis added) *with* TEX. CIV. ST. art. 3731a ("Any . . . certificate . . . *made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision*, in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein . . . .")(emphasis added)*, repealed by* Texas Rules of Evidence, eff. Sept. 1, 1983 (Acts 1939, 46th Leg., § 1); Texas Rules of Criminal Evidence, eff. Sept. 1, 1986 [Acts 1985, 69th Leg., ch. 685, §

9(b)].[12] Thus, we conclude that the district court's decision to admit the death certificate was contrary to the plain language of § 191.052.

Furthermore, the district court's decision to admit the death certificate under § 191.052 finds no support in Texas case law. No Texas court has addressed the question of whether, under § 191.052, statements on cause of death found in a death certificate certified only by the county are admissible as evidence of cause of death. If faced with this question, it is likely that a Texas court would closely follow § 191.052's state certification requirement; courts applying the statutory predecessor to § 191.052, TEX. CIV. STAT. art. 4477, Rule 54a,[13] strictly adhered to its requirement that the death certificate be certified by the state registrar. *See Armstrong v. Employers Cas. Co.*, 357 S.W.2d 168, 170 (Tex. Civ. App. – Waco 1962, no writ)(rejecting the argument that certification of a death certificate by a city official was sufficient to satisfy the state certification requirement of art. 4477, Rule 54a); *see also Texas Reserve Life Ins. Co. v. Dees*, 368 S.W.2d 886, 888 (Tex. Civ. App. – San Antonio 1963, writ ref'd n.r.e.)(holding that a death certificate, prepared by the Justice of the Peace and not signed by the state registrar, was not admissible under art. 4477, Rule 54a);

---

[12] Prior to its repeal, article 3731a made admissible, so far as relevant, any death certificate made by an officer of the state or of any governmental subdivision thereof. *See Combined American Ins. Co. v. Gilmore*, 428 S.W.2d 857, 859 (Tex. Civ. App. – Fort Worth, 1968).

[13] Rule 54a provided

[t]hat the state registrar shall, upon request, supply to any properly qualified applicant a certified copy of the record of any birth or death registered under provisions of this Act, for the making and certification of which he shall be entitled to a fee of fifty cents, to be paid by the applicant. And any such copy of the record of a birth or death, *when properly certified by the state registrar*, shall be prima facie evidence in all courts and places of the facts therein stated.

TEX. CIV. STAT. art. 4477, Rule 54a (emphasis added), *repealed by* Acts 1989, 71st Leg., ch. 678, § 13(1), eff. Sept. 1, 1989 (adopting the Texas Health & Safety Code).

-10-

*Washington Nat. Ins. Co. v. Chavez*, 106 S.W.2d 751, 752 (Tex. Civ. App. – El Paso 1937, writ dism'd)(holding that the district court correctly excluded the death certificate signed by the coroner, since art. 4477, Rule 54a "applies only to copies of the record certified by the state registrar of vital statistics"); *Universal Life & Acc. Ins. Co. v. Ledezma*, 61 S.W.2d 165, 166 (Tex. Civ. App. – Beaumont, 1933, writ dism'd)(holding that the trial court properly excluded a death certificate certified only by a local, city registrar because, under art. 4477, Rule 54a, the power to make certified copies of death records receivable in "all courts" is conferred upon the state registrar).[14] For the foregoing reasons, we conclude that the district court erred in its decision to admit Decedent's county-certified death certificate over Siemens' hearsay objection, and that this error was clear under current law.

The district court's clear error impacted the outcome of the trial. The death certificate was, in essence, the only evidence linking Decedent's 1996 stroke to his death in 1998.[15] Petitioner failed

---

[14] Courts from other jurisdictions have similarly applied the plain meaning of hearsay exceptions requiring state certification. *See, e.g., State v. Hamilton*, 16 N.C. App. 330, 334 (1972)(explaining that certification by the county does not satisfy the requirements of North Carolina's corollary to Tex. Health & Safety Code § 191.052); *Williams v. Mertz*, 549 So.2d 87, 89 (Ala. 1989)(declining to admit a death certificate under Alabama's corollary to Tex. Health & Safety Code § 191.052, since the death certificate at issue was certified by another state, instead of Alabama's state registrar of vital statistics).

[15] In the district court, Petitioner effectively conceded that the only evidence supporting the jury's finding that Decedent's stroke was a producing cause of his death was the death certificate. In the "Plaintiff's Response to Defendant's Motions and Brief in Support," Petitioner argued:

> It was undisputed that the death certificate referred to the stroke that is the subject of this case . . . The only other evidence concerning the cause of death was the statement by Mrs. Anderson in her journal that Bill had died of pneumonia and a "second stroke." To the extent, if any, that this evidence presented a conflict concerning cause of death, the jury was entitled to give credence to the death certificate over the lay statement of a grieving widow, who admittedly has no medical training. The jury thus had a reasonable basis for concluding that Mr. Anderson's

to present the testimony of the certifying physician)) or any other expert medical witness)) to support the death certificate's conclusion that the immediate cause of Decedent's death, pneumonia, was "due to" (or "a likely consequence of") his 1996 stroke.  Thus, insofar as Petitioner's suit against Siemens sought to recover damages for Decedent's death, the critical lynchpin holding together Petitioner's case was the erroneously-admitted death certificate's unsupported conclusion on the cause of death.  Even assuming, *arguendo*, that the death certificate's statements on cause of death were admissible,[16] we seriously doubt that such statements, unsupported by expert testimony, could

stroke was a producing cause of his death.

In her appellate brief, Petitioner argues that the death certificate is not the only evidence that Decedent's death resulted from his stroke, since Petitioner's state court pleading (in her suit against the doctors and nurses) contained the statement that Decedent's death "resulted from complications flowing from the original injury on May 31, 1996."  This argument is unavailing; such pleadings are not evidence.  *See Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex.1971).

[16] Even if Decedent's death certificate had been properly certified by the state registrar, its statements on cause of death may not have been admissible.  Whether such statements are admissible would depend on how they are characterized: as facts, or as opinions.  If such statements can be fairly characterized as facts, then they are admissible as prima facie evidence of cause of death.  TEX. HEALTH & SAFETY CODE § 191.052; *see also Aetna Life Ins. Co. v. Kegley,* 389 F.2d 348, 355 (5th Cir. 1967)(holding that, under former Tex. Rev. Civ. Stat. Ann. art. 4477, Rule 54a, a death certificate's identification of the cause of death as a "coronary thrombosis" is prima facie proof that coronary thrombosis was the cause of death); *Marker v. Prudential Ins. Co. of Amer.,* 273 F.2d 258, 264 (5th Cir. 1960)(applying Tex. Rev. Civ. Stat. Ann. art. 4477, Rule 54a, to death certificates prepared by a medical examiner, and reasoning that "findings in the original and amended certificate of suicide and accident  were findings of fact, admissible as prima facie evidence only, and subject under the controlling rules of evidence, to full explanation and contradiction"); *Reserve Life Ins. Co. v. Shacklett's Estate*, 412 S.W.2d 920, 922 (Tex. Civ. App. – Tyler 1967, writ ref'd n.r.e.)(holding that, under Tex. Rev. Civ. Stat. Ann. art. 4477, Rule 54a, a statement in a death certificate that the death was accidental constitutes prima facie evidence of accidental death); *Tix v. Employers Cas. Co.*, 368 S.W.2d 105, 110 (Tex. Civ. App. – Houston [1st Dist.] 1963, no writ)(stating that a death certificate is prima facie evidence of cause of death); *Standard Ins. Co. v. Thomas*, 383 S.W.2d 447, 452 (Tex. Civ. App. – Tyler 1964, no writ)("[T]he death certificate is of some probative force" in determining cause of death).  If, however, such statements on cause of death are better characterized as opinions, then they may not be admissible.  *See Texas Employers' Ins. Assoc. v. Gregory*, 534 S.W.2d 166, 168 (Tex. Civ. App. – Houston [14 dist.] 1976, no writ)(determining that the cause of

have provided sufficient evidentiary support for the jury's finding that Decedent's 1996 stroke (listed on the death certificate as the "underlying" cause of death) was the producing cause of his death from pneumonia (the "immediate" cause of death) two years later. It was Petitioner's burden at trial to establish, with "reasonable medical probability," that Decedent's stroke was a producing cause of his death. *See Minnesota Mining & Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 197 (Tex. App.–Texarkana 1998, pet. denied). Ordinarily, expert testimony is needed to satisfy the reasonable medical probability standard for establishing a causal link. *See id.* at 197-98; *see also Williams v. NGF, Inc.*, 994 S.W.2d 255, 256-57 (Tex. App.–Texarkana 1999, no pet.)(reasoning that expert testimony that demonstrated the possibility of a causal link, but failed to satisfy the reasonable medical probability standard, was insufficient). However, for unexplained reasons, Petitioner failed to present any expert testimony on the causal link between Decedent's stroke and his death. Considering that *two years* elapsed between Decedent's stroke and his death, and considering that pneumonia is listed on Decedent's death certificate as the more "immediate" cause of his death, expert testimony was necessary to establish the reasonable medical probability of a causal link between Decedent's 1996 stroke and his death. We have found no Texas case holding that a death certificate's statement concerning the secondary (or "underlying" ) cause of a person's death is sufficient, without supporting expert testimony, to establish that the secondary cause was, in all reasonable medical probability, a producing cause of that death. For these reasons, we conclude that the district court's

death portion of a death certificate is inadmissible because the "notation is not a 'fact'. . . but is, rather, an opinion of the justice of the peace"); *Armstrong v. Employers Cas. Co.*, 357 S.W.2d 168, 169-72 (Tex. Civ. App. – Waco 1962, no writ)(holding that a statement in a death certificate signed by Justice of the Peace, after inquest, that the death was accidental was not admissible where the cause of death was controverted).

erroneous admission of Decedent's death certificate)) and its unsupported statements on cause of death)) affected Siemens' "substantial rights." *Cf. Williams*, 264 F.3d at 576 (finding no reversible error where the erroneous admission of a prosecution witness' prior consistent testimony was *not* the "critical lynchpin holding together the Government's case").

The district court's erroneous decision to admit the Decedent's death certificate)) the only evidence linking Decedent's 1996 stroke to his death in 1998)) seriously affected the fairness of the judicial proceeding. Its erroneous decision affected not only the jury's determination that Decedent's 1996 stroke was the producing cause of his death, but also its calculation of damages. The jury's $7 million award of damages lumps damages incurred as a result of Decedent's 1996 stroke together with damages associated with Decedent's subsequent death two years later. From the jury's verdict form, there is no way of knowing the specific amount of the damages award that is attributable to the jury's finding that Decedent's 1996 st roke was a producing cause of his death. The jury form failed to identify those damages stemming solely from the 1996 stroke separately from those damages stemming from his death. Thus, if the district court's error is not corrected, then an undetermined amount of the $7 million judgment against Siemens will rest on evidence that clearly should have been excluded at trial. It is within our discretion to correct thi s error. *See Olano*, 507 U.S. at 734.


Under the Federal Rules of Civil Procedure, a court may grant a new trial "to all or any of the parties and on all or part of the issues...." FED.R.CIV.P. 59(a). This authority is also vested in courts of appeals; it is within our discretion to grant a new trial on some or all of the issues raised. *Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479, 481 (5th Cir. 1985). However, "[p]artial new trials should not be resorted to 'unless it appears that the issue to be retried

is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Id*. (quoting *Caskey v. Village of Wayland*, 375 F.2d 1004 (2d Cir.1967)(quoting *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931))).  Thus, in cases where the issues subject to retrial are "so interwoven with other issues in the case that they 'cannot be submitted to the jury independently ... without confusion and uncertainty, which would amount to a denial of a fair trial,' then it is proper to grant a new trial on all of the issues raised." *Id*. (quoting *Gasoline Products*, 283 U.S. at 500)).

Assuming, *arguendo*, that a reasonable jury could have found)) as the jury did)) that Siemens is liable to Petitioner for damages associated with Decedent's stroke, it would, nonetheless, cause considerable confusion and uncertainty if we granted a retrial only on the issue of whether Siemens is liable for damages associated with Decedent's death.  Given the interrelatedness of these issues, and given that the jury's award of damages fails to identify damages incurred as a result of Decedent's stroke separately and apart from those damages associated with Decedent's death, we conclude that there should be a retrial of all the issues raised, including damages.  *See Colonial Leasing*, 770 F.2d at 481; *cf. Nissho-Iwai Co. v. Occidental Crude Sales*, 729 F.2d 1530, 1538-39 (5th Cir. 1984)(holding that it was appropriate to order a complete new trial, rather than only a partial retrial, of fraud claim, since that claim arose out of acts surrounding contract breach and understanding of fraud required understanding of contract claim); *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 491 n.3 (5th Cir. 1976)(ordering a new trial limited to a redetermination of only two items of damages, but only because "the judge clearly separated the amounts he awarded for each element of damages"); *Allen v. Chance Mfg. Co.*, 873 F.2d 465, 473-74 (1st Cir. 1989)(ordering new trial on liability only where the error did not affect the determination of damages).

IV

For the foregoing reasons, we VACATE the jury's verdict and its award of damages, and we REMAND for a retrial on all of the issues raised at trial.[17] Siemens' motion to certify the question of whether Texas would apply § 6(e) of the Restatement (Third) of Torts is DENIED.

---

[17] Because we have remanded this case for a retrial on of all of the issues raised below, we need not address Siemens' arguments 1) that no reasonable jury could have found that there was a design defect in the ventilator that was a producing cause of Decedent's 1996 stroke, 2) that Decedent's death certificate should have been excluded because Petitioner failed to disclose the death certificate during pretrial disclosures, 3) that no reasonable jury could have found that Siemens failed to prove that negligence on the part of the "medical" team was the proximate cause of Decedent's stroke, and 4) that no reasonable jury could have found that Siemens was 100% responsible for causing the injury/occurrence. Moreover, we need not address Siemens' argument that the damages awarded by the jury were excessive, or its argument that the district court failed to calculate properly the award of pre-judgment interest.