**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 94-20400

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOHN J. JOHNSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

October 31, 1995

Before WISDOM, HIGGINBOTHAM, and PARKER, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, John J. Johnson, was indicted for agreeing to rig bids on food service contracts, for making fraudulent statements in a bid on a federal contract, and for conspiracy to commit mail fraud. Johnson filed a motion to dismiss the indictment, which the district court denied. At trial, Johnson was convicted of bid rigging and mail fraud, but was acquitted of making false statements on a federal contract. Johnson now alleges error both in the conduct of the trial, and in the district court's initial decision not to dismiss the indictment against him. For the reasons that follow, we AFFIRM.

1

## BACKGROUND

During the 1980's, Glazier Foods Co. ("Glazier"), White Swan, Inc., and Sysco, Inc., were the three major food service distributors in the Houston, Texas area. John Johnson, the appellant, was employed by Glazier, and was responsible for submitting that company's bids for school and hospital contracts. Joseph Mobley performed this service for Sysco, and James Maurice Johnson ("Maurice") did the same for White Swan.

In 1985, Mobley approached Johnson and asked him to rig Glazier's bid for an upcoming contract. Johnson agreed, and the two men subsequently rigged their bids for a number of other contracts. In 1986, Maurice joined White Swan, and significantly underbid both Sysco and Glazier on at least one contract during that school term. As a result, Mobley and Johnson approached Maurice about joining the bid rigging arrangement sometime in 1987. Maurice agreed, and the three men rigged bids until late 1989 or 1990, when the Department of Justice ("the government") began investigating their activities.

Several months into the investigation, Mobley agreed to cooperate with the government. He met with government officials ten to twelve times in 1990, and at their request, began to put together a "bid book" of the bids he thought were rigged. Because Mobley had no independent memory of when the conspiracy started, and had previously erased from Sysco's records all of the direct information about the conspiracy, Mobley created his bid books solely from examining Sysco's profit margins on various accounts.

2

Based on this information, Mobley went before a grand jury and testified that he and Johnson had conspired to rig bids from 1987 until the beginning of the government investigation.

Around the time Mobley began to work with the government, he gave his personal attorney a box of materials that included a tape recording of Johnson and himself agreeing to rig bids on several school district contracts in the 1985-86 school term. Mobley's attorney did not turn this tape over to the government until November 1991.

At that time, Mobley listened to the tape with the government, and determined that the conversation with Johnson took place in July 1985. Based on the tape, Johnson altered his "bid book" to reflect the 1985 bids. Mobley then reappeared before the grand jury, and revised his testimony to say that his conspiracy with Johnson started in 1985.

In March 1991, Maurice also entered into a plea bargain with the government. Afterwards, Johnson called Maurice several times to talk about the investigation. Each time, the two men discussed Mr. Johnson's dissatisfaction with his counsel, and Maurice frequently urged Johnson to enter a plea. When the government learned that Maurice and Johnson were still in contact, they asked Maurice to allow them to tape two phone calls to Johnson in an attempt to determine what involvement other Glazier officials may have had in the conspiracy. Government officials specifically warned Maurice not to discuss Johnson's relationship with his attorney in the two taped conversations, but Johnson raised the

3

subject each time. Maurice ignored government signals to change the subject and urged Johnson to plead guilty. The government terminated the second conversation when Johnson tried to set up a three-way conversation with his attorney.

Neither conversation produced any evidence about the conspiracy, and the tapes were not used either to obtain the indictment or at trial. Johnson did not enter a plea, and retained his attorney through the trial and appeal process.

On July 7, 1992, a grand jury returned a three count indictment against Johnson, alleging that he took part in one continuous conspiracy to arrange bids from 1985 to 1990. The indictment charged him with one count of arranging to rig bids, one count of filing a false statement on a federal contract, and one count of conspiring to commit mail fraud.

Johnson filed a motion to dismiss the indictment on the grounds that the government's participation in the two telephone calls between Maurice and Johnson interfered with Johnson's relationship with his lawyer. The district court denied the motion, and the case went to trial.

At trial, over Johnson's objection, the government introduced the 1985 tape of Johnson and Mobley conspiring to rig bids. At the end of evidence, Johnson moved for a judgment of acquittal, arguing that the tape proved a separate conspiracy from the one proved by the rest of the evidence, thus creating a fatal variance with the single conspiracy charged in the indictment against him. Johnson also asked the district court to instruct the jury on his theory of

multiple conspiracies.  The district court denied both motions, and the jury convicted Johnson of arranging to rig bids and of mail fraud, but acquitted him of making a false statement on a federal contract.

Johnson now appeals his conviction on four grounds.  First, he maintains that the district court should have dismissed the indictment against him because the government's pre-indictment conduct allegedly interfered with his attorney-client relationship. Second, Johnson argues that the 1985 tape of himself and Mobley should have been excluded from evidence because it was unreliable and had a suspect chain of custody.  Third, Johnson maintains that the district court should have granted his motion for a judgment of acquittal on the grounds of a fatal variance between the indictment and the proof at trial.  Finally, Johnson argues that the district court erred by not instructing the jury on the possibility of multiple conspiracies.  We consider each of these arguments in turn.

I.

Johnson maintains that the government violated his Fifth Amendment due process rights by initiating and taping the phone calls in which Maurice disparaged Johnson's lawyer and urged Johnson to plead guilty.  The decision to dismiss a case on this basis is a question of law that is reviewed *de novo* by this court.[1]

Government misconduct does not mandate dismissal of an

---

[1] *United States v. Graves,* 556 F.2d 1319, 1322 (5th Cir.1977), *cert denied,* 435 U.S. 923 (1978).

indictment unless it is "so outrageous" that it violates the principle of "fundamental fairness" under the due process clause of the Fifth Amendment.[2]   Such a violation will only be found in the rarest circumstances.[3]  We find that the government conduct in this case did not reach such an extreme level.

The evidence shows that the government did not intend to be a part of conversations regarding Johnson's attorney, and took precautions against such discussions.  Agents instructed Maurice not to discuss Johnson's attorney, and signaled him to change the subject when Johnson brought up the topic.  An agent terminated the second call when Johnson attempted to call his attorney and have him speak to Maurice.   Government conduct was not so outrageous that this court must dismiss the indictment.

Johnson also suggests that the district court should have dismissed the indictment against him because the government's conduct violated the Texas State Bar Rule and the American Bar Association Model Rule that prohibits a prosecutor from contacting someone known to be represented by an attorney.  Such professional disciplinary rules do not apply to government conduct prior to indictment, however, and certainly do not apply to the indiscretions of a non-attorney government informant.[4]   Thus, Johnson's argument is unpersuasive.

---

2 *United States v. Russell*, 411 U.S. 423, 431-32 (1973).

3 *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir.), *cert. denied*, 474 U.S. 901 (1985).

4 *United States v. Heinz,* 983 F.2d 609, 613 (5th Cir. 1993).

6

Furthermore, there is no evidence that Johnson was prejudiced by the government's actions. A defendant must show prejudice to his ability to receive a fair trial before charges will be dismissed.[5] In this case, the recorded conversations were not introduced at the trial. Johnson was not induced to cooperate with the government, and has retained his lawyer throughout his trial and appeal. He has presented no specific allegation of ineffective representation or a factual explanation of how the conversations with Maurice prejudiced his ability to present a defense. Thus, the district court was correct to deny Johnson's motion to dismiss his indictment.

## II.

Johnson next appeals the district court's decision to admit into evidence the tape of a 1985 conversation between Johnson and Mobley, a co-conspirator. He argues that the tape was unreliable and had an improper chain of custody.[6]

A district court's decision to admit evidence is reviewed for an abuse of discretion.[7] Any break in the chain of custody affects

---

5 *United States v. Weeks,* 919 F.2d 248, 254 (5th Cir. 1990), *cert. denied,* 499 U.S. 954 (1991).

6 Johnson also argues that this tape was inadmissible because it referred to what he calls the "1985 conspiracy," and thus was irrelevant to the "1987 to 1990 conspiracy" proved at trial. Johnson concedes that he did not make this argument to the court prior to the admission of the tape recording. Thus, he may not appeal the admissibility of the tape on this ground. Johnson did preserve for appeal the issue of a fatal variance in the trial as a whole, however. This issue will be discussed in the next section.

7 *United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994), *cert. denied,* 115 S. Ct. 1113 and 1825 (1995).

the weight, not the admissibility of evidence.[8]  Thus, if the district court correctly finds that the government has made a *prima facie* showing of authenticity, then the evidence is admissible, and issues of authenticity are for the jury to decide.[9]

The record in this case clearly shows that the government made the necessary showing of authenticity.  Mobley testified that he made the tape in 1985, placed the tape in a desk drawer, and forgot about it until 1990, when he came under investigation.  At that time, Mobley gave the tape to his attorney, along with various other materials.  Mobley's attorney testified that he did not discover the tape until he and Mobley were preparing for a deposition in 1991.  At that time, he immediately gave it to his secretary.  The secretary testified that the tape stayed in her desk until she turned it over to the government in November of 1991.  In addition, the government submitted expert testimony that no one had tampered with the tape.  Johnson has not challenged any of this evidence.  Thus, it is clear the government made a *prima facie* showing of admissibility.  The district court did not abuse its discretion in admitting the tape into evidence.

### III

Johnson next argues that the district court should have granted his motion for a judgment of acquittal on the grounds of a fatal variance between the inditcment and the proof at trial.  He

---

8  *Id.*

9  *United States v. Sparks*, 2 F.3d 574, 582 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 720, 899, 1548 (1994).

maintains that Mobley's tape proved one conspiracy in 1985 between Sysco and Glazier Foods, and that the other evidence proved a later conspiracy between all three companies beginning in 1987.

In reviewing a claim of fatal variance, this court will reverse a conviction only if the evidence at trial varied from the allegations of the indictment and the variance prejudiced the defendant's substantial rights.[10]  Johnson's appeal fails on both grounds.

The evidence at trial was consistent with the single conspiracy charged in the indictment.  Although Mobley included only post-1987 contracts in his "bid book" that he relied on during testimony, Mobley testified that he had not prepared the same documents for the contracts rigged prior to 1987, and that he had destroyed other documentation regarding the conspiracy.  He testified, however, that the conspiracy began in 1985 with the Deer Park School district, and that he and Johnson rigged at least that one district from 1985 until 1990.

Johnson's only evidence that there was no such conspiracy in the 1986-1987 school year is Maurice's testimony that competition was "fierce" in that year.  Maurice was not a part of the conspiracy at that time, however, and could only have been discussing the situation with his company still making competitive bids.  In fact, Mobley testified that he suspected there was a conspiracy between Sysco and Glazier in 1986-1987 because his own

---

[10] *United States v. Faulkner,* 17 F.3d 1350, 1357 (5th Cir.), *cert denied*, 114 S. Ct. 1861 and 2119 (1994).

9

bid on one contract came in "about 99 percent less" than those of the other two companies, and because shortly thereafter Mobley asked him to join the conspiracy.

Contrary to the suggestion of the appellant, the fact that Maurice later joined the existing conspiracy does not turn the single conspiracy into two separate conspiracies.[11]  Thus, the evidence produced at trial sufficiently proved the single conspiracy charged in the indictment.

Moreover, even if the evidence had proved two separate conspiracies, Johnson was not prejudiced by the variance.  A defendant's rights are affected if the defendant is surprised at trial or placed at risk of double jeopardy.[12]  Johnson has not made either argument.  Furthermore, because Johnson was at the center of both conspiracies, there can be no fear of transference of guilt between the two crimes.[13]  Thus, the district court properly denied Johnson's request for a judgment of acquittal.

**IV**

Johnson's final argument is that the trial judge erred by not instructing the jury on multiple conspiracies.  This court reviews the trial court's refusal to give a particular instruction for abuse of discretion.[14]  A party appealing the refusal must show that

---

[11] *United States v. Atkins,* 834 F.2d 426, 432 (5th Cir. 1987).

[12] *United States v. Robinson,* 974 F.2d 575, 578 (5th Cir. 1992).

[13] See *United States v. Winship,* 724 F.2d 1116, 1123 (5th Cir. 1984).

[14] *United States v. Lokey,* 945 F.2d 825, 835 (5th Cir. 1991).

10

the requested instruction was substantially correct; that it was not substantially covered by the trial court's instructions; and that it concerned an issue so important that the omission seriously impaired the defendant's ability to present a given defense.[15] Johnson has not met this burden.

Johnson's proposed instruction would have incorrectly required the jury to automatically acquit him if it found that multiple conspiracies existed, without further instructing that it could still convict Johnson if it found that he was a party to one of the conspiracies charged in the indictment.[16] The charge given by the trial court adequately instructed the jury that it could not convict Johnson unless the government proved beyond a reasonable doubt that the defendant knowingly joined in the *conspiracy described in the indictment*. Finally, because Johnson has failed to show how the alleged fatal variance prejudiced his substantive rights, Johnson's defense could not have been seriously impaired by the district court's refusal to give the proposed charge. The district court therefore correctly refused to instruct the jury on Johnson's multiple conspiracy theory.

## CONCLUSION

For the foregoing reasons, we AFFIRM the conviction against John Johnson.

---

[15] *United States v. Broussard*, 987 F.2d 215, 223 (5th Cir. 1993).

[16] *United States v. Hernandez*, 962 F.2d 1152, 1160 (5th Cir. 1992).

11