REVISED DECEMBER 22, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-41277

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAMES W SANDLIN

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CR-242

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

James Sandlin was convicted by a jury for making false statements on two loan applications in violation of 18 U.S.C. § 1014. Sandlin argues on appeal that the evidence was insufficient to sustain his convictions, that his sentence was procedurally and substantively improper, and that his conviction should be overturned on the basis of outrageous government conduct. We find no error in the conviction, and no basis to conclude that outrageous conduct occurred. We therefore AFFIRM the conviction. However, we find an absence of evidence that the omissions on his applications caused the loans to be made. We therefore VACATE and REMAND for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

James Sandlin was a real estate developer from Arizona who moved to Sherman, Texas. In Sherman, Sandlin met Jim and Mary Louise Ricketts, from whom he borrowed $996,000 ("the Ricketts Loan"). The loan was made in September of 2005. There is some suggestion that Sandlin agreed to pay an unusually high rate of interest, but he has met his repayment obligations. The loan was secured by property Sandlin owned in Cochise County, Arizona. Though not directly involved in the case before us, criminal investigators in Arizona who were focusing on a United States Congressman became interested in the loan. Sandlin's prosecution arose out of the Arizona investigation.

After the Ricketts Loan was obtained, Sandlin decided to develop a parcel of land in Mohave County, Arizona. In order to secure a performance bond on the project, Sandlin applied in April 2006 for a $950,000 letter of credit from the Independent Bank of Sherman. Among the assets used as collateral for the letter of credit was a certificate of deposit which was partially funded by the Ricketts Loan proceeds. The letter of credit was to be paid only upon Sandlin's failure to perform, and no call on that letter was ever made.

In the process of obtaining the letter of credit, Sandlin completed and signed a personal financial statement for Independent Bank. All financial liabilities and promissory notes were to be listed, but Sandlin did not reveal the Ricketts Loan in the required documents. Sandlin listed the Cochise County property as an asset, but did not state that it was encumbered.

Sandlin received two other extensions of credit based on the same incomplete financial information. In May 2006, Sandlin sought a separate $700,000 line of credit. Independent Bank agreed. It took a first lien on the Mohave property and cross-applied the certificates of deposit pledged to secure the original letter of credit. In November 2006, Sandlin also renewed a

previously issued $1,000,000 letter of credit, referencing his earlier and faulty financial documents. Sandlin provided no further security on the renewal.

In late December 2006, Sandlin submitted a second personal financial statement, which again omitted the Ricketts Loan. Independent Bank extended two further lines of credit based on the second application form. First, Sandlin received $800,000 for the purchase of new property. Second, he renewed the $700,000 line of credit issued in May 2006. On both financial statements, Sandlin checked "yes" to the question, "Do any of your assets secure any debts which have not been reported in the previous schedules?" However, Sandlin did not reveal on either document the character or amounts of those debts.

Sandlin was indicted on two counts of violating 18 U.S.C. § 1014 – one count for each financial statement omitting the Ricketts Loan. During the trial, both of the Ricketts and representatives from Independent Bank testified on Sandlin's behalf. The bank asserted that all of Sandlin's loans were fully collateralized, and that the bank had not lost any money in its transactions with Sandlin. Testimony from bank representatives revealed that the false loan documents were not required and were probably never reviewed. Nevertheless, Sandlin was convicted by a jury on both charges.

The Probation Office prepared a Pre-sentence Investigation Report ("PSR") recommending a guideline term of imprisonment between fifty-one and sixty-three months. The two counts were calculated together for the purpose of sentencing. See U.S.S.G. § 3D1.2(d). Sandlin's offense level was calculated by starting with a baseline offense level of seven under Section 2B1.1 and applying a single enhancement up to level twenty-four based on the conclusion that Sandlin had "derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(14)(A).[1]

---

[1] The PSR, which was prepared in July of 2008, properly designated the applicable sentencing guideline as U.S.S.G. § 2B1.1(b)(13). The Guideline was amended effective

Sandlin objected to the "gross receipts" enhancement, noting that in its absence, his base offense level would have been seven, resulting in a term of zero to six months' imprisonment. The district court overruled Sandlin's objection, and instead applied a downward departure reducing his offense level to twenty on the rationale that the bank had not suffered any financial loss as a result of his false statements.[2]

## II. DISCUSSION

We first review the questions raised about conviction. Sandlin claims that the proof was inadequate as to his state of mind and his specific intent in making the false statements to the bank.

A. Sufficiency of the Evidence for Conviction

When the issue has been properly preserved, as it was here, we review a claim that the evidence was insufficient by determining whether any rational trier of fact could have found the evidence to establish the elements of the offense beyond a reasonable doubt. United States v. Villarreal, 324 F.3d 319, 322 (5th Cir. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The elements of guilt under Section 1014 are these: (1) the defendant knowingly and willfully made a false statement to the bank, (2) the defendant knew that the statement was false when he made it, (3) the defendant made the false statement for the purpose of influencing the bank to extend credit, and (4) the bank to which the false statement was made was federally insured. See 18 U.S.C. § 1014; see also United States v. Devoll, 39 F.3d 575, 578 (5th Cir. 1994).

---

November 1, 2008. The subsections of the statute were renumbered without changing the relevant language. See U.S.S.G. § 2B1.1(b)(13)(2007), amended by Amendment 719 (Supp. to Appx. C 2008). The language to which we refer in this opinion is presently designated as U.S.S.G. § 2B1.1(b)(14) (2008).

[2] The district court applied U.S.S.G. § 5K2.0(a)(1)(A) & (B) authorizing downward departures where the court finds a "mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration" in the Guidelines.

Sandlin alleges that the Government failed to establish the second and third elements beyond a reasonable doubt.

First, Sandlin challenges the Government's proof concerning whether the false statements were "knowing and willful." We agree that the burden is not met with a showing that he "forgot" to list the Ricketts Loan.

At trial, the Government emphasized that Sandlin made regular monthly payments on the Ricketts Loan, even during the period when he filed the defective financial statements. The Government also highlighted the size of the loan – nearly one million dollars – a fact that could have led the jury to conclude that the Ricketts Loan was simply too large of an expense to forget. There was no suggestion from Sandlin's counsel other than that the loan may have been forgotten to explain its omission.

While the evidence lends itself to different interpretations, the jury has wide discretion to choose among them. See United States v. Clark, 577 F.3d 273, 284 (5th Cir. 2009). To support a jury verdict, the evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . " Id. (citations and quotations omitted).

Sandlin further contends that the Government's evidence of intent weighs equally in favor of innocence and guilt, thus requiring his conviction to be overturned. There are statements in some of our opinions that where the evidence gives nearly equal circumstantial support to a theory of guilt or innocence, the defendant is entitled to reversal. E.g., United States v. Mackay, 33 F.3d 489, 493 (5th Cir. 1994). However, there is no such equality here. Most of the circumstantial evidence presented at trial supports the jury's inference of guilt. Sandlin speculated that the Ricketts Loan might have been forgotten, but there was little to support his theory. Sandlin merely suggested that a person with significant wealth might forget a single loan among his many liabilities. The Government, on the other hand, demonstrated Sandlin's business savvy and

his desire to obtain the extensions of credit in question, as well as the size of the Ricketts Loan and Sandlin's continued monthly payments. In fact, the evidence showed that Sandlin paid nearly $100,000 in interest alone on the Ricketts Loan during the 2006 calendar year. He also omitted the loan – which was costing him thousands of dollars in principal and interest – twice in the space of ten months. Upon reviewing the evidence, "the sole inquiry is not whether the jury's verdict was ultimately correct, but whether the jury made a reasonable decision based upon the evidence introduced at trial." United States v. Pando Franco, 503 F.3d 389, 394 (5th Cir. 2007) (citation omitted). As is its prerogative, the jury in this case found that Sandlin's actions evinced a knowing and willful state of mind. We will not disturb that finding.

Second, Sandlin contends that the Government did not present adequate evidence that he intended to induce the bank to make the loan through his failure to list the loan. This issue focused on Sandlin's subjective state of mind. A false statement need not be material nor relied upon by the bank to violate Section 1014. See United States v. Wells, 519 U.S. 482, 489-91 (1997). Sandlin principally complains that the Government's evidence was circumstantial, proving nothing more than the Ricketts Loan was omitted from the statement. Noting the bankers' testimony that Sandlin likely would have received credit even if he had listed the Ricketts Loan, he alleges that the Government did not carry its burden to prove subjective intent.

There are numerous flaws in Sandlin's argument. We have held that if a person makes a false statement that has the capacity to influence the bank, "then the specific intent necessary to violate [Section] 1014 may be inferred and the offense is complete." United States v. Johnson, 585 F.2d 119, 124 (5th Cir. 1978). Absent a confession, intent will almost always have to be established by circumstantial evidence.

At trial, the Government offered significant evidence of Sandlin's intent to induce the bank to make the loan. Each of the forms he signed contained language noting that the statements were "submitted for the purpose of obtaining credit from" the bank. While this boilerplate language would not be alone sufficient to prove intent, it is certainly evidence of it. Additionally, the jury could infer that because Sandlin checked "yes" in the box asking whether he had further liabilities not listed on the forms, that he did remember the Ricketts Loan and deliberately chose not to include it.

Moreover, because the relevant inquiry concerns Sandlin's intent, not the bank's, it does not matter that the bank might have made the loans even without considering what was on the application. Id. at 124. The Government was required to present such circumstantial evidence as jurors would be entitled to accept, that Sandlin believed he was influencing the bank to make the loan. Fact-finders at trial are permitted to "use their common sense and evaluate the facts in light of their common knowledge of the natural tendencies and inclinations as human beings." See United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989) (citations and quotations omitted).

The jury reasonably could believe that Sandlin's actions demonstrated his intent to influence the bank through his incomplete applications. We find that the evidence was sufficient to sustain the needed inferences.

B. Validity of the Sentence

Sandlin asserts four distinct sentencing errors: (1) the district court did not properly consider the Section 3553(a) factors, (2) the sentence was substantively unreasonable, (3) the "gross receipts" sentencing enhancement was improperly applied, and (4) the Government failed to prove that the money was obtained as a direct result of his false statements to the bank.

We vacate Sandlin's sentence due to the fourth claim of error. That decision makes it unnecessary to consider some of the other arguments. The

procedures and substance of the past sentence are now moot. We only identify the issues to demonstrate their mootness.

1. Proper sentencing procedures under 18 U.S.C. § 3553(a)

Sandlin alleges that the district court failed to consider adequately the statutory sentencing factors. See 18 U.S.C. § 3553(a). A district court's failure to consider these factors is procedural error. Gall v. United States, 128 S. Ct. 586, 597 (2007).

Section 3553(a) requires the sentencing judge to "state in open court the reasons for its imposition of the particular sentence." See Rita v. United States, 551 U.S. 338, 356 (2007) (citing former 18 U.S.C. § 3553(c)). Whether the district court complied with this obligation in the sentence that we are vacating is irrelevant.

2. Substantive reasonableness of the sentence

Sandlin further contends that his sentence was substantively unreasonable. Specifically, he argues that thirty-six months' imprisonment is unduly harsh and longer than necessary to accomplish the Section 3553(a) goals. Because there is no sentence now in effect, we abstain from dicta about the reasonableness of the former one.

3. "Gross receipts" enhancement

The district court used an enhancement that applies when a "defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(14)(A). Fact findings underlying that decision are reviewed here for clear error and its interpretation of the Guidelines reconsidered de novo. Smith, 440 F.3d at 706.

The crux of Sandlin's argument is that the $1,000,000 in gross receipts ought to be offset by his collateral. In other words, Sandlin notes that he did not actually "receive" more than $1,000,000 from the false loan documents. First, he contends that most of his credit was never drawn upon. Second, even where

the accounts were used, Sandlin's collateral at all times exceeded the face value of the loans. In essence, Sandlin alleges that he was borrowing his own money through the bank. Thus, he contends that the bank was never in danger of losing any money, much less $1,000,000.

Although the parties continue to dispute on appeal whether the bank was in fact fully secured, the district court found that the amount disbursed by the bank was not less than $2,000,000.

For our purposes, the risk of loss to the bank is irrelevant. See United States v. Gharbi, 510 F.3d 550, 554-57 (5th Cir. 2007). In Gharbi, the defendant unlawfully obtained real estate mortgages in excess of $1,000,000. Id. at 552. Relying on the plain text of the Guidelines, we held that the appropriate measure of "gross receipts" was the full face value of the loans. Id. at 555-56. Specifically, because the defendant used the full amounts for his own purposes, we did not consider whether he was entitled to "credit" for the security provided to the bank by the mortgaged property. Id. The defendant was not permitted to use the existence of collateral as a discount for his sentence. See id. We therefore concluded that "gross receipts consist of the entire amount of th[e] loan, less nothing." Id. at 555.

Sandlin suggests a distinction because there is no evidence that Gharbi was a "no-loss" case. However, requiring the district court to make artificial calculations concerning the value of collateral to be deducted from the amounts disbursed contradicts the plain language of the statute. Sandlin may not now substitute the words "net receipts" for "gross receipts" in the Guidelines. Id. We have held that "gross receipts" refers to the amount loaned, not the amount at risk, and our prior holding to that effect controls.

4. Gross receipts obtained "as a result" of the offense

Sandlin asserts a second reason why use of the "gross receipts" enhancement was improper. This reason has merit. He contends that he did not

9

derive more than $1,000,000 "as a result of the offense." U.S.S.G. § 2B1.1(b)(13)(A). In adopting the PSR recommending a sentence under this provision, the district court implicitly found that the money Sandlin obtained was as a result of the offense. See United States v. Rodriguez-Rodriguez, 388 F.3d 466, 468 n.8 (5th Cir. 2004). A district court is entitled to accept the facts contained in a PSR when they constitute an adequate evidentiary basis and there is no rebuttal evidence from the defendant. United States v. Stalnaker, 571 F.3d 428, 441 (5th Cir. 2009). Sandlin failed to present evidence on this issue and did not assert it as a defense until this appeal. Accordingly, we review for plain error. See United States v. Peltier, 505 F.3d 389, 392 (5th Cir. 2007).

We have not previously interpreted the "as a result of" language from Section 2B1.1(b)(14)(A). Its simple language requires that the money be derived as a result of the violation of the statute. In contrast with our analysis under Sandlin's sufficiency of the evidence claim, this inquiry focuses on the actions of the bank. Specifically, we consider whether the bank extended credit because of Sandlin's false statements.

The record is largely devoid of evidence relevant to this issue. The lack of evidence may stem from a pre-trial order granting a motion in limine in favor of the Government. That order excluded all evidence relating to whether Sandlin's false statements were material to the bank's decision, or whether the bank actually relied upon them in making the loans.

Every indication is that the bank was not interested in checking behind Sandlin's application. Witnesses from the bank asserted that Sandlin's loans would have been permitted even if the Ricketts Loan had been listed. It is true that the bank's regional president also testified that it would "concern him" if it became apparent that the collateral for a loan included the proceeds of illegal activity. There is nothing to support, though, that Sandlin's identifying the Ricketts Loan would have made it apparent that illegal activity occurred.

10

Our issue is whether the facts underlying the PSR on this point had such an inadequate evidentiary basis as to sink to the level of plain error. During oral argument, the Government suggested that the identification on the loan applications of this potentially illegal loan might have created suspicions that could have led to refusing the loan, not because of a lack of collateral but because of concerns created about Sandlin from the suspicious prior transaction. We find nothing beyond speculation to support this theory. To the contrary, the evidence was that Sandlin had been and remained a valued customer at Independent Bank. Had the motion in limine not been granted, there might have been more evidence on this. But the fact remains that the potentially toxic nature of the Ricketts Loan, whose fumes might even have caused a bank as customer-friendly as this one to feel faint, is pure speculation on this record.

The onus is on Sandlin on plain error review to demonstrate the lack of an adequate evidentiary basis. United States v. Fernandez, 559 F.3d 303, 318 (5th Cir. 2009) (finding that defendant bears the burden of persuasion on plain error review). We have examined the evidence available, looking for any to indicate a cause and effect relation between the omission of the information and the bank's decision to authorize the loan. There is none.

As we have noted, plain error review requires satisfaction of three elements. First, there must be error and it must be plain. Peltier, 505 F.3d at 392. It is plain that an "adequate evidentiary basis" requires at least some evidence supporting the conclusions reached in the PSR. None exists on this record. The little evidence that does exist suggests that the funds were not obtained "as a result of" Sandlin's offense. There was error, and it is plain.

Additionally, plain error must also affect a substantial right. Id. Sandlin's sentence was enhanced seventeen levels and increased from a potential zero to six month term to thirty-six months' imprisonment. An increase of this magnitude impacts Sandlin's substantial rights. See United States v. Gracia-

Cantu, 302 F.3d 308, 313 (5th Cir. 2002) (finding that a sixteen level enhancement affected defendant's substantial rights). Our final, overarching concern on plain error is whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Peltier, 505 F.3d at 392. We conclude that the dramatic increase in sentence satisfies the fourth prong by affecting the fairness of this proceeding. We therefore exercise our discretion to correct the unobjected-to error. Gracia-Cantu, 302 F.3d at 313.

We therefore reverse and remand for resentencing. At a new sentencing hearing, the Government may offer evidence not presented previously to justify the sentence, and Sandlin may offer rebuttal. United States v. Kinder, 980 F.2d 961, 963 (5th Cir. 1992). We have held that when a defendant succeeds in having a sentence vacated, on remand "all new matter relevant to the issue appealed, reversed, and remanded, may be taken into consideration by the resentencing court." United States v. Marmolejo, 139 F.3d 528, 530 (5th Cir. 1998). A district court should gather "the relevant facts and evidence on the specific and particular issues heard by the appeals court and remanded for resentencing." Id.

C. Outrageous Government Conduct

For the first time on appeal, Sandlin suggests that the Government engaged in conduct so outrageous that it deprived him of due process under the Fifth Amendment. He alleges that the Government's behavior requires reversal of his conviction and dismissal of the indictment. Typically, we review de novo whether outrageous conduct requires dismissal of an indictment. United States v. Mauskar, 557 F.3d 219, 231 (5th Cir.), cert. den., 129 S. Ct. 2756 (2009). Here, though, Sandlin raises this issue for the first time on appeal. Our sister circuits have applied plain error review for claims of outrageous government conduct not preserved in the district court. See United States v. Duncan, 896 F.2d 271, 274-

75 (7th Cir. 1990) (citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980)).

We have applied plain error review for constitutional violations not raised at trial. See, e.g., United States v. Vargas, 580 F.3d 274, 278 (5th Cir. 2009); United States v. Knowles, 29 F.3d 947, 951 (5th Cir. 1994). Accordingly, we review Sandlin's allegations that implicate his due process rights under the Fifth Amendment for plain error.

In support of his outrageous conduct claim, Sandlin cites to several statements made by the prosecutor at sentencing. When asked by the judge why Sandlin would omit the Ricketts Loan when he clearly had adequate assets to fully collateralize his various lines of credit, the prosecutor acknowledged that Sandlin may have had other motives for concealing the Ricketts Loan beyond inducing the bank to extend credit. Specifically, the prosecutor suggested that Sandlin concealed the Ricketts Loan because those funds may have been used in illegal dealings with an Arizona congressman. The Justice Department's Public Integrity Unit prosecuted this case after discovering Sandlin's actions during its investigation in Arizona.

Ultimately, Sandlin alleges that in this "no-loss" case, the Justice Department was attempting to leverage its advantage in the cases pending in Arizona against Sandlin and the congressman. If the prosecution tried the case knowing that Sandlin's intent was to conceal illegal activity, and not to influence the bank to make the loan, he contends, the Government engaged in conduct sufficient to offend due process.

The standard for proving outrageous governmental conduct is extremely demanding. "Government misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment." Mauskar, 557 F.3d at 231-32 (citations and quotations admitted). Such conduct will only be

found in the "rarest" of circumstances. Id. Given the plain error review used here, this standard becomes even more difficult to meet. We have declined to find outrageous conduct where the Government failed to disclose that the defendant's signature on a particular document was forged, id. at 232-33; engaged in entrapment, Stokes v. Gann, 498 F.3d 483, 485 (5th Cir. 2007); or abducted the defendant from his home country to circumvent extradition proceedings, United States v. Chapa-Garza, 62 F.3d 118, 121 (5th Cir. 1995).

Sandlin's claim that the prosecution knew he did not have the requisite intent to influence the bank pales against the threshold for outrageous conduct. Even if true, this conduct does not so "shock[] the universal sense of justice" that it could constitute outrageous government conduct under plain error review. Mauskar, 557 F.3d at 232. Moreover, we do not accept that Section 1014 requires the Government to prove that Sandlin's only intent in omitting the Ricketts Loan was to influence the bank. Even if Sandlin was attempting to conceal illegal activities in Arizona, it does not follow that his omission could not also have been intended to prevent the bank from discovering that his collateral was tainted with unlawfully obtained funds, which might have prevented an extension of credit. There was no government conduct offensive to due process.

We AFFIRM Sandlin's conviction and VACATE and REMAND for resentencing consistent with our opinion.