# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2010

No. 09-10505
Summary Calendar

Charles R. Fulbruge III
Clerk

ALWAYS AT MARKET INC,

Plaintiff–Appellee

v.

RONALD GIRARDI,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-2145

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Ronald Girardi, *pro se*, appeals, the magistrate judge's order granting judgment in favor of Always at Market Inc. ("AAM"). The magistrate judge found that Girardi accepted $230,560 in kickbacks from a vendor while employed at AAM, and that he used the funds to set up a competitor, Contempo Group,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-10505

Inc. ("CGI").[1]  Because the district court did not commit clear error in its liability or damages determination, we affirm in part.  We remand for the district court to determine attorney's fees due on Girardi's counterclaim.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

AAM is a direct and secondary distributor of watches and other merchandise, mostly through internet auction sites.  AAM procures merchandise at discounted prices from vendors, and then either sells the merchandise directly to end-users over the internet or to internet auction sites.  AAM hired Girardi beginning January 1, 2003 to develop AAM's watch business, because Girardi's experience in the watch industry left him with valuable inroads with watch suppliers in East Asia.  AAM paid Girardi $84,000 in salary.

In summer 2004 Girardi formed CGI with his business partner Ed Goldberg.  Goldberg was at no time employed by AAM, but Girardi often worked with Goldberg to procure watches for AAM before they formed CGI.  CGI engaged in the same watch business as AAM and competed directly or indirectly with AAM by distributing watches supplied by some of the same vendors that Girardi had brought to AAM.

One supplier, Asad Massoud, sold watches to Girardi and Goldberg for both AAM and CGI.  Massoud, in a written deposition response, testified that he paid "kickbacks" of between $2 to $10 per unit on watches he sold to AAM through Goldberg and Girardi.  Massoud testified that Goldberg told him that the kickbacks were for Girardi.  John House, AAM's president and founder, testified that Girardi bought between 70,000 and 80,000 watches from Massoud's companies on behalf of AAM.

On April 15, 2005, House terminated Girardi effective April 2, 2005.  On August 10, 2005, Massoud sent AAM an invoice detailing the amount AAM owed

---

[1] CGI was a co-defendant at trial, and was found jointly and severally liable with Girardi.  CGI did not appeal.

on 11,320 watches. Girardi had negotiated the purchase of those watches with Massoud before House fired him. Upon closer examination of the spreadsheet, AAM noticed hidden columns listing a "C:per price" of $10 for each watch. The hidden columns showed the price of the watch units both before and after the $10 had been added.

AAM sued Girardi and CGI in state court for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, unfair competition, and tortious interference with contractual relations. Girardi removed the case to federal court and counterclaimed for unpaid wages for his last two weeks of employment. The parties consented to a bench trial before the magistrate judge. At trial, AAM called House to testify regarding his relationship with Girardi and Girardi's employment. Girardi's counsel objected on hearsay grounds when AAM's counsel asked what Goldberg told House. Counsel for AAM argued that he would establish a conspiracy between Girardi and Golberg, so that Goldberg's statements were not hearsay. The magistrate judge told the parties that she would carry the objection with the merits.[2] AAM also introduced Exhibit 17, the invoice sent from Massoud, and Exhibit 22, Massoud's written deposition, into evidence without objection.

The parties then submitted proposed findings of fact and conclusions of law. Girardi argued in his submission that the only evidence showing that Girardi received kickbacks was hearsay. The magistrate judge found Girardi liable for breach of contract, breach of fiduciary duty, and tortious interference with contract for taking kickbacks from Massoud. The magistrate judge also found that Girardi engaged in unlawful competition and misappropriated trade secrets, but that AAM did not prove damages on those counts.

---

[2] The magistrate judge never ruled on Girardi's hearsay objection.

The magistrate judge found that AAM proved $230,560 in damages from the kickback scheme.  The magistrate judge also found that AAM owed $4,851.78 less any applicable withholding for unpaid wages resulting from Girardi's work performed between April 2, 2005 and April 15, 2005.  The magistrate judge ordered Girardi to pay reasonable and necessary attorney's fees for misappropriation of trade secrets.  AAM submitted an unopposed motion for $40,000 in attorney's fees and costs after the magistrate judge issued her decision.  Girardi timely appealed.

## II.  DISCUSSION

We review a judgment entered by a magistrate with the consent of the parties by the same standard of review that we would apply to a decision of the district court.  *Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 98 (5th Cir. 1996) (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)).  "In an appeal from a bench trial, we review the district court's findings of fact for clear error and questions of law *de novo*."  *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) (citations omitted).  In a bench trial, the district court clearly errs if:

> (1) the findings are without substantial evidence to support them, (2) the court misapprehended the effect of the evidence, and (3) although there is evidence which if credible would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are so against the preponderance of credible testimony that they do not reflect or represent the truth and right of the case.

*Id.*

### A.    Hearsay

"Generally we review a district court's evidentiary rulings for an abuse of discretion."  *Anderson v. Siemens Corp.*, 335 F.3d 446, 471 (5th Cir. 2003) (citing *Vance v. Union Planters Corp.*, 209 F.3d 438, 441 (5th Cir. 2000)).  If the

No. 09-10505

appellant failed to make a specific objection, we review for plain error. *Id.*. To find plain error (1) there must be error and it must be plain; (2) the error must affect a substantial right; and (3) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *United States v. Sandlin*, 589 F.3d 749, 757–58 (5th Cir. 2009) (citations omitted). If we find these three elements, we have discretion to find plain error. *Id.* at 758.

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is not hearsay if it is made "by a co-conspirator during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). The party seeking introduction of the co-conspirator's statement must prove by a preponderance of the evidence: "(1) the existence of the conspiracy; (2) the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Hall*, 500 F.3d 439, 443 (5th Cir. 2007) (citing *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999)).

Girardi argues that the magistrate judge erred by admitting Massoud's testimony as to what Goldberg told him. However, the record shows that he did not object to admission of any of Massoud's testimony until he submitted his Annotated Proposed Findings of Fact and Conclusions of Law after trial.[3] Federal Rule of Evidence 103(a) requires Girardi to object upon admission of the evidence. *United States v. Gonzales*, 436 F.3d 560, 576 n.11 (5th Cir. 2006) (citing *United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002)). Because Girardi did not object to admission of Massoud's written deposition or the invoice Massoud sent, we review for plain error.

--------

[3] Girardi objected to some statements by House as hearsay during direct examination. Those statements, however, are not relevant on appeal.

5

The magistrate judge never explicitly ruled that she would consider Massoud's testimony as to Goldberg's statements because they were statements of a co-conspirator, but she nevertheless considered the evidence. Therefore, we assume she admitted the evidence as a statement of a co-conspirator, and we ask whether the magistrate judge committed plain error. The evidence showed that CGI was a joint venture between Goldberg and Girardi, which directly competed with AAM. Therefore, there was some evidence of a conspiracy between Goldberg and Girardi to misappropriate trade secrets. Goldberg's instructions to Massoud to pay extra kickback commission for Girardi could have furthered the conspiracy. We cannot say that the magistrate judge plainly erred by considering Massoud's testimony.

## B.    Sufficiency of Evidence

"The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach." *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted). To find breach of a fiduciary duty, "(1) a fiduciary relationship must exist between the plaintiff and the defendant, (2) the defendant must have breached its fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 304 (Tex. App.—Dallas 2009, no pet.) (citations omitted).

Girardi argues that AAM introduced insufficient evidence to show liability or damages. We disagree. Regarding liability, there is no dispute that Girardi owed fiduciary duties to AAM as its sales representative, *see Molex, Inc. v. Nolen*, 759 F.2d 474, 479 (5th Cir. 1985) (applying Texas law to find a sales representative owed fiduciary duties to his employer), and that he had a contract to develop AAM's watch business. Nor do they dispute that AAM fulfilled its

obligations under the contract until the last two weeks of Girardi's employ. The evidence for the breach of contract is the same as the breach of fiduciary duty: Girardi accepted secret payments from Massoud in violation of both his contractual and fiduciary duties to AAM. This breach caused AAM damages because, as the invoice sent from Massoud shows, AAM paid for every kickback added in. Massoud's deposition described this scheme, and as explained above, Girardi did not object to its admission. We cannot say that the magistrate judge clearly erred by finding breach of fiduciary duty and breach of contract.

With respect to damages, the magistrate judge found that Girardi took at least $230,560 in kickbacks. The magistrate judge applied $10 each for every watch shown in Exhibit 17 for a total of $11,320; and $2 each for the remaining 58,680 watches, which represent the bottom of the range Massoud described. We find that the magistrate judge did not clearly err by finding that AAM suffered at least $230,560 in damages.

### C.    AAM's Attorney's Fees and Costs

"Under Texas law, trade secret misappropriation is established by showing: '(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff.'" *Alcatel USA, Inc. v. DGI Tech., Inc.*, 166 F.3d 772, 784 (5th Cir. 1999) (quoting *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)). "Each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. § 134.005(b).

Girardi argues that the magistrate judge erred by awarding attorney's fees and costs under this provision because AAM produced no evidence that Girardi misappropriated trade secrets, and therefore the magistrate judge lacked a statutory basis for awarding attorney's fees. The magistrate judge found that Girardi had misappropriated trade secrets, and also found that Texas law

7

directed her to award attorney's fees and costs for misappropriation of trade secrets, even though AAM had proven no damages resulting from the misappropriation.

AAM produced sufficient evidence that Girardi misappropriated the trade secret of the process of selling watches on and to internet auction sites, that Girardi breached his confidential relationship with AAM by acquiring the trade secret for his own gain, and that he used the trade secret for his own business without authorization from AAM. The magistrate judge did not clearly err by crediting the testimony AAM put forward and discrediting Girardi's testimony. We affirm the grant of attorney's fees and costs because the plaintiff need not prove damages to be entitled to attorney's fees under section 134.005(b). *See Johns v. Ram-Forwarding, Inc.*, 29 S.W.3d 635, 637–38 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (upholding award of attorney's fees where jury awarded no damages). Furthermore, AAM was also entitled to attorney's fees based on Girardi's breach of contract which did result in a damage award. *See Matter of Smith*, 966 F.2d 973, 978 (5th Cir. 1992) (finding that under Texas law that attorney's fees are mandatory on claims for breach of contract).

## D.    Girardi's Attorney's Fees and Costs

"To recover attorney's fees under [Texas Civil Practice and Remedies Code] Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). "The award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract preceded by proper presentment of the claim is mandatory." *Id.* at 978 (citing *Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). A party need only prevail on a single claim to recover under Section 38.001, and need not obtain a net recovery. *Brent v. Field*, 275

No. 09-10505

S.W.3d 611, 622 (Tex. App.—Amarillo 2008, no pet.) (citing *McKinley v. Drozd*, 684 S.W.2d 7, 10–11 (Tex. 1985)).

Girardi contends that the magistrate judge erred by denying him legal costs based on counterclaim for breach of contract. Because Texas law mandates awarding attorney's fees, and because the magistrate judge awarded Girardi $4,851.78 in damages, we find that the magistrate judge erred by not awarding Girardi any attorney's fees. We thus reverse and remand to the magistrate judge for determination of reasonable attorney's fees and costs with respect to Girardi's counterclaim.

## E.    Motion to Supplement the Record

"As a general rule, this court will not enlarge the record on appeal with evidence not before the district court." *McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008) (internal quotations and citation omitted). Girardi moves to supplement the record with materials he claims show AAM has experienced growth since it hired him, and a transcript of a conversation he had with Massoud. Girardi claims that the evidence would reveal a massive conspiracy by AAM. Girardi has not provided sufficient justification to depart from the general rule, so we deny Girardi's motion to supplement.

## III.  CONCLUSION

For the reasons stated above, we AFFIRM the magistrate judge's order on AAM's claims against Girardi, but REVERSE and REMAND for a determination of reasonable attorney's fees due Girardi. We also DENY Girardi's motion to supplement the record.

AFFIRMED in part, REVERSED in part, and REMANDED.