# United States Court of Appeals for the Fifth Circuit

---

No. 25-50844
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2026

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JUAN RAMON HERNANDEZ-LIMON,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:25-CR-75-1

---

Before CLEMENT, RICHMAN, and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

Juan Ramon Hernandez-Limon appeals his conviction and eighteen-month prison sentence for illegally reentering the United States in violation of 8 U.S.C. § 1326(a). He contends that the district court erred when it denied his motion to dismiss the indictment because, in his view, the government's conduct was outrageous and violated his due process rights.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-50844

On January 26, 2025, federal agents arrived at Hernandez-Limon's San Antonio home armed with an administrative warrant. They approached Hernandez-Limon as he exited his vehicle, and Hernandez-Limon retreated into his home when he saw them. The agents instructed Hernandez-Limon to come out. Not only did Hernandez-Limon not comply, he tried to flee by scaling a fence. A negotiator placed a phone call to the occupants inside the home and asked them to exit. No one did. The agents then obtained an arrest warrant for Hernandez-Limon, announced clearly over a loudspeaker that they had obtained the warrant, and ordered the occupants outside. Again, nothing. The agents' repeated attempts at diplomacy were rejected, so they resorted to a more forceful strategy to encourage Hernandez-Limon's surrender. They deployed an armored suburban vehicle and a small robot equipped with a camera to allow the agents to see inside the home. The agents also shot plastic rounds filled with baby powder into the home, aiming for the ceiling to avoid hitting anyone inside, and they used flash-bang grenades.

Hernandez-Limon argues that the agents unnecessarily deployed military-style equipment in a residential neighborhood and engaged in military-style tactics to apprehend him for a non-violent immigration offense, "laying siege to his house for about six hours." All the while, Hernandez-Limon says the agents were aware that his wife and infant daughter were also in the home and that Hernandez-Limon did not have a violent criminal record. The government responds that the agents' "gradual but progressive" methods were necessary to execute the arrest warrant because Hernandez-Limon had attempted to flee from the agents, he had a prior conviction for unlawful firearm possession, and the agents' less invasive efforts to induce his cooperation were unsuccessful. The government also submits that Hernandez-Limon had several opportunities to exit his home and surrender to the agents, and the agents made a sincere attempt to avoid causing harm to Hernandez-Limon and the other occupants.

2

No. 25-50844

We review de novo whether an indictment must be dismissed for violation of due process. *United States v. Posada-Carriles*, 541 F.3d 344, 353 (5th Cir. 2008).

"The standard for proving outrageous governmental conduct is extremely demanding." *United States v. Sandlin*, 589 F.3d 749, 758 (5th Cir. 2009). "Government misconduct does not mandate dismissal of an indictment unless it is 'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment." *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)). "Such conduct will only be found in the 'rarest' of circumstances." *Sandlin*, 589 F.3d at 759 (citation omitted). "[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will" violate due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).

Hernandez-Limon has failed to meet this extremely demanding standard. The agents faced a noncompliant individual with a prior firearms conviction evading capture and hiding in his home. They escalated their tactics to make an arrest—an arrest for which they properly sought and secured a warrant. And they took steps to avoid causing injury to Hernandez-Limon and others with him. Contrary to Hernandez-Limon's argument, the agents' conduct is a far cry from *Rochin v. California*, where the officers ordered a doctor to pump the defendant's stomach to make him regurgitate drugs the officers believed he swallowed to conceal. 342 U.S. 165, 166 (1952). That case shocks the conscience. *Id.* at 172. This case does not.

We AFFIRM.